UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61348-CIV-ROSENBAUM
(Consent Case)

ANDREW A. OSTROW,

      Plaintiff,

vs.

GLOBECAST AMERICA INCORPORATED,
a Delaware corporation,

      Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION

This matter comes before the Court upon Plaintiff Andrew Ostrow's Motion for Rehearing on Age Discrimination Claim [D.E. 63]. The Court construes Plaintiff's motion as a motion for reconsideration of the Court's granting of summary judgment to Defendant GlobeCast America, Inc., on Count I of Plaintiff's Complaint, the Age Discrimination in Employment Act claim. For the reasons set forth below, the Court now denies Plaintiff's Motion for Reconsideration.

### I. BACKGROUND

Plaintiff Andrew Ostrow ("Plaintiff" or "Ostrow") filed his complaint against his former employer, Defendant GlobeCast America, Inc. ("Defendant" or "GlobeCast"[1]), in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida. *See* D.E. 1-1. The Complaint set forth a claim for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") (Count I), and a claim for breach of contract (Count II).

---

[1]The Court points out that "GlobeCast" in this Order refers only to GlobeCast America, Inc., not to any of the other GlobeCast companies around the world.

GlobeCast filed its Motion for Summary Judgment, and on October 13, 2011, the Court granted GlobeCast's motion as it related to Ostrow's ADEA claim, finding that Ostrow had failed to submit evidence tending to rebut GlobeCast's stated legitimate, non-discriminatory reason for terminating Ostrow's employment — financial reasons and restructuring of the legal department. *See* D.E. 55. On October 18, 2011, Ostrow filed the pending Motion for Rehearing on Age Discrimination Claim [D.E. 63]. In his motion, Ostrow urges the Court to reconsider its ruling, asserting that the Court arrived at its conclusion based on "significant mathematical errors" in calculating the savings to GlobeCast by ending Ostrow's employment. *Id.* at 1.

## II. DISCUSSION

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. School Board of Hillsborough County*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)). In the Eleventh Circuit, courts should grant motions for reconsideration only where (1) an intervening change in controlling law happens; (2) new evidence is discovered; (3) the need to correct clear error or prevent manifest injustice exists; or (4) a patent misunderstanding by the Court of the party's arguments has occurred. *FTC v. Capital Choice Consumer Credit, Inc.*, 2004 WL 5141452, *2 (S.D. Fla. May 5, 2004) (citing *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). Motions for reconsideration should not be permitted to be used "'as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind.'" *Id.* (quoting *Brogodon v. National Healthcare Corp.,* 103 F. Supp. 2d 1332, 1338 (N.D. Ga. 2000)). If the courts allowed motions for reconsideration under such circumstances, the litigant would receive "'two bites at the apple.'" *See id.* (quoting *American Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d

2

1237, 1239 (11th Cir. 1985)).

      Ostrow appears to proceed under the third basis for seeking reconsideration: the need to correct clear error or prevent manifest injustice, insisting that the Court based its ruling on a faulty mathematical calculation. Significant problems undercut Ostrow's argument.

      First, Ostrow asks the Court to consider the validity of GlobeCast's proffered reason of saving money as tested by the passage of time. In other words, Ostrow claims that contrary to GlobeCast's stated intention of saving money by releasing Ostrow, as it turned out, Ostrow's termination actually caused GlobeCast to incur additional expenses. But "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (citation omitted). For this reason, even if time proved wrong GlobeCast's assumptions that it would save money by ending Ostrow's employment, it matters not, as long as GlobeCast actually believed that terminating Ostrow's employment would do so.

      A review of the record demonstrates that Ostrow has presented nothing that would tend to undermine GlobeCast's evidence that it believed at the time that it let Ostrow go, that doing so would result in significant savings to GlobeCast. To the contrary, all evidence supports a finding that GlobeCast truly believed that it would save money by releasing Ostrow. Indeed, the significant evidence of GlobeCast's negative financial position stands unrebutted on the record. While Ostrow worked for GlobeCast, it never turned a profit; it reduced its workforce by at least half, ultimately eliminating one — or half — of its attorneys in its legal department; and it consolidated its offices all to reduce costs. GlobeCast also consistently represented its financial problems as the reason for not renewing Ostrow's contract: Justin advised Ostrow of this reason at the time that Justin informed Ostrow that GlobeCast would not be renewing Ostrow's contract, GlobeCast's formal letter to

3

Ostrow stating that his contract would not be renewed similarly invoked GlobeCast's financial considerations, and, as noted above, the evidence GlobeCast has submitted in this case is all very consistent with the notion that GlobeCast did not renew Ostrow's contract for financial reasons.

In response to this unrebutted mountain of evidence of financial doom, Ostrow offers only a general comment by a law school associate dean that hourly billing by outside counsel *can* cost clients more money than flat-rate billing, Ostrow's personal view that "[a] Big Law law firm charging hourly is not, and cannot be as efficient as in-house lawyers," and the contention that GlobeCast did not actually care about saving money because it offered to move Ostrow to New York and left to Carroccia the decision regarding how outside counsel would bill GlobeCast. D.E. 63 at 2. Quite simply, this is not enough to tend to discredit GlobeCast's stated belief that eliminating Ostrow would save it money, particularly in view of the uncontested evidence of GlobeCast's financial picture and its effective elimination of more than half of its workforce over the period of Ostrow's employment. Ostrow submits no evidence to show that moving him to New York would result in additional expenses to GlobeCast in the long run. Indeed, such a conclusion runs counter to the purpose of considering transferring Ostrow to New York. As for billing decisions, there is nothing implicitly unreasonable or illogical in allowing general counsel to determine how an outside law firm should bill the company. This is particularly true in the case of Carroccia, who regularly negotiated sales and vendor contracts on behalf of GlobeCast.

Second, even if it mattered whether GlobeCast's prediction that terminating Ostrow's employment would save it money turned out to be correct — which, for the reasons previously discussed, it does not — as a matter of fact and contrary to Ostrow's premise, Ostrow cannot show that the ending of his employment did not result in savings to GlobeCast. Ostrow reaches his faulty conclusion through the following calculation:

> Ostrow's salary [of] $219,000 over 18 months equals $328,000.
>
> Carroccia['s] salary for 18 months at $175,000 equals $262,500[.]
>
> Outside counsel billing equals $125,000.
>
> Retaining Ostrow cost $328,000[,] while replacing him with Carroccia plus outside counsel cost $387,500.
>
> Firing Ostrow only increases the cost to GlobeCast. This is because Ostrow's severance of $109,000 was not taken into account.
>
> So, using the same figures:
>
> Carroccia['s] salary is $262,500[.]
>
> Outside counsel is $125,000[.]
>
> Ostrow['s] severance is $109,000[.]
>
> Total cost is $496,500.

D.E. 63 at 1-2. Ostrow's calculations suffer from two fatal flaws. First, Ostrow's calculation ignores the fact that his termination reduced the number of attorneys in GlobeCast's legal department by half. Although GlobeCast increased Carroccia's salary by $23,500 after Ostrow left, while Ostrow was working at GlobeCast, GlobeCast was paying Carroccia a salary of $155,000. Upon Ostrow's departure, GlobeCast had to pay only Carroccia, not Carroccia and Ostrow. As a result, over the 18-month period since Ostrow left GlobeCast, GlobeCast saved the entirety of Ostrow's salary ($328,500), minus the increase to Carroccia's salary after GlobeCast terminated Ostrow's employment ($47,000) and GlobeCast's expenditures on outside counsel ($125,000), for a total savings of $169,250, at the very least.

Second, nor is Ostrow's suggestion to account for severance pay in the calculation appropriate. As a matter of fact, Ostrow has not been awarded severance pay at this time, and he may not be; that decision lies in the hands of a jury. Moreover, returning to Ostrow's first

5

misconception, courts evaluate proffered legitimate business reasons based on the belief of the employer at the time of the adverse employment action.  Here, whether or not GlobeCast turns out ultimately to be correct about whether Ostrow's employment agreement obligates GlobeCast to pay Ostrow severance, all evidence of record indicates that GlobeCast believed that it would not have to pay Ostrow severance when it terminated Ostrow's employment.  That is all that the law requires.  In short, Ostrow has submitted nothing that would tend to discredit GlobeCast's proffered reason for ending Ostrow's employment or to show that age discrimination supplied the "but-for" reason that GlobeCast chose not to renew Ostrow's contract.  *See Gross v. FBL Fin. Servs., Inc.*, ___ U.S. ___, 129 S. Ct. 2343, 2351 (2009).

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Rehearing on Age Discrimination Claim [D.E. 63] is **DENIED**.

**DONE AND ORDERED** this 19th day of October 2011.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record